**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| RAY ELBERT PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-00590 |
| | ) | |
| | ) | |
| HUNTING POINT APARTMENTS, LLC, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss the Amended Complaint.

Plaintiff, a resident at the Bridgeyard Apartments in Alexandria, Virginia (formerly known as the Hunting Point Apartments), filed this pro se action on May 6, 2015. Defendants Hunting Point Apartments, LLC, and Jeff Elowe ("Defendants")[1] moved to dismiss the Complaint on June 11, 2015. Plaintiff sought leave to file an Amended Complaint on June 16, 2015. Defendants did not oppose the motion to amend. The motion was granted on July 27, 2015, and the Amended Complaint was filed the same day.

---

[1] Referenced herein as "Defendants," though not including the other party against whom Plaintiff filed this suit, EPA Administrator Gina McCarthy. Administrator McCarthy was not party to the Motion to Dismiss the Amended Complaint.

Plaintiff's Amended Complaint states that the cause of action arises under the U.S. Constitution; the Federal Rules of Civil Procedure; 42 U.S.C. §§ 1983, 1985, and 1986; the Fair Housing Act; the Civil Rights Act; the Clean Air Act; the Toxic Substances Control Act; the Occupational Safety and Health Act; the Consumer Product Safety Act; and several jurisdictional statutory provisions. However, the Amended Complaint neither specifies particular violations of any of the cited statutes or the Constitution, nor cites facts in connection with any element of any federal statute.

Taking the Amended Complaint in the light most favorable to the Plaintiff, the Court takes that Plaintiff intends to allege constitutional violations for "red lining, social steering, economic determinism and gentrification" giving rise to a claim under 42 U.S.C. § 1983;  violations of various environmental statutes, giving rise to a citizen suit; discrimination under federal fair housing and civil rights laws based on age and "economic determinism and gentrification"; improper eviction; and tort claims arising from asbestos exposure. Plaintiff seeks $2 billion in damages in his Amended Complaint. On August 28, 2015, Plaintiff moved to amend damage claims to $3 billion. Plaintiff fails to state a single cognizable claim for relief and, for the following reasons, Defendants' Motion to Dismiss must be granted.

Generalized, unsupported assertions are insufficient to state a claim. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. See, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085-86 (4th Cir. 1979). While the well-pleaded allegations of a complaint are presumed to be true for purposes of a motion to dismiss, legal conclusions unsupported by allegations of specific facts are insufficient to withstand a motion to dismiss under Rule 12(b)(6). Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). Legal conclusions in the guise of factual allegations are similarly insufficient. See, e.g., District 28, 609 F.2d at 1085-86.

A court should dismiss a complaint if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. A claim will lack "facial plausibility" unless the plaintiff "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).
Determining "whether a complaint states a plausible claim for
relief," is a "context-specific task that requires the reviewing
court to draw on its judicial experience and common sense." Id.
at 679 (citations omitted). A complaint fails to state a claim
if the well-pleaded facts "do not permit the court to infer more
than the mere possibility of misconduct." Id. Even under a
notice pleading regime, a complaint must contain sufficient
evidentiary facts to raise a plausible—as opposed to just
conceivable—inference that the Plaintiff is entitled to relief.
Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680. Under Twombly,
a Plaintiff must allege enough facts "to raise a right to relief
above the speculative level[.]" Robinson v. Am. Honda Motor Co.,
551 F.3d 218, 222 (4th Cir. 2009) (quoting Twombly, 550 U.S. at
555, 570). Here, the Amended Complaint fails to state a claim
against Defendants even when viewed in the most generous light.

Plaintiff fails to state a claim under 42 U.S.C. § 1983.
Plaintiff states that his Amended Complaint "arises under" 42
U.S.C. § 1983. The Amended Complaint, however, does not specify
the nature or specific factual bases for a § 1983 claim.  In
general, § 1983 provides a private remedy for constitutional
violations carried out "under color of any statute, ordinance,
regulation, custom, or  usage, of any State or Territory of the
District of Columbia." 42 U.S.C. § 1983.  The U.S. Supreme Court

held that a plaintiff "must satisfy two jurisdictional requisites
to state an actionable  claim" under § 1983.  Lugar v. Edmondson
Oil Co., Inc., 457 U.S. 922, 946 (1982).  First, plaintiffs must
demonstrate that there was "a state action." Second, plaintiffs
"must show that the alleged deprivation was caused by a person
acting 'under color' of law." Id.  In situations where "the
State is not responsible for a private decision to behave in a
certain way," there is no  state action, and therefore no
cognizable claim under § 1983. Id. at 949.

     Such is the case here. Plaintiff has pled no facts
indicating that the alleged conduct  of the Defendants
constitutes "state action" for the purposes of § 1983. Plaintiff
does not allege that the Defendants are public entities. He does
not allege that they  engaged in state action. He does not allege
that they have acted "under color of law" in any way. Therefore,
Plaintiff failed to state a § 1983 claim against Defendants.

     Moreover, Plaintiff fails to allege facts giving rise to any
constitutional violations  that could form the basis for § 1983
action.  The purported constitutional  violations raised by
Plaintiff–"red lining, social steering, economic determinism and
gentrification"–are too vague to constitute redressable
allegations, and are not cognizable violations of any part of the
U.S. Constitution.

Plaintiff falls short of the requirement that he plead facts showing more than "the mere possibility of misconduct." Iqbal, 556 U.S. at 679. Even under the generous pleading standards afforded *pro se* litigants, Plaintiff's § 1983 claim should be dismissed.

Plaintiff also fails to state a claim under environmental or consumer laws. Plaintiff raises four environmental and consumer laws in the "jurisdiction" paragraph of his Amended Complaint: the Clean Air Act, the Toxic Substances Control Act ("TSCA"), the Occupational Health and Safety Act ("OSHA") and the Consumer Product Safety Act ("CPSA"). None of these statutes are noted in the body of the pleading. As the elements of these statutes have not been mentioned, much less pleaded, the Amended Complaint does not state a claim under any of the statutes. Moreover, two of the statutes are not enforceable by a generalized private right of action. The two generally enforceable by private action require specific predicates that Plaintiff has not fulfilled.

Under the Clean Air Act, an individual may bring a "citizen suit" to enforce its requirements so long as notice of the violation is first provided to EPA, to the state in which the violation occurs, and to any alleged violator at least 60 days before the suit is filed. 42 U.S.C. § 7604(b)(1). Here, Plaintiff neither provided prior notice to HPA nor alleged facts indicating that he provided such notice to EPA or to Virginia.

This Court lacks subject matter jurisdiction over these claims and they must be dismissed. See Dodge v. Mirant Mid-Atlantic, LLC, 732 F. Supp. 2d 578, 583 (D. Md. 2010) ("[T]he law is clear that notice is a mandatory prerequisite to suit under the [Clean Air Act]").

TSCA similarly requires any person who intends to file a citizen suit to provide a 60-day notice to EPA and to the alleged violator before filing the claim. 15 U.S.C. § 7619(b)(1). Plaintiff failed to provide such notice to HPA, and pled no facts indicating that he did so for the EPA or Virginia. OSHA does not include a general right to bring citizen suits. Rather, OSHA only permits private actions through a specific pathway: "[a]ny employees or representatives of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection" by filing a complaint with OSHA. 29 U.S.C. § 657(f)(1). Plaintiff's Amended Complaint is facially clear that Plaintiff is not an HPA employee; therefore, he may not bring a claim against HPA under OSHA. Even if Plaintiff were an HPA employee, this Court lacks original jurisdiction over OSHA claims. Plaintiff would need to exhaust his administrative remedies before pursuing relief in this Court. Plaintiff provides no indication that he has done so.

Likewise, CPSA does not provide for general citizen suits. CPSA limits the right of private action to persons who sustained injury due to "any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by" the Consumer Products Safety Commission. 15 U.S.C. § 2057(a). CPSA applies only to "consumer products," and residential housing is not a "consumer product." The Act specifically defines "consumer product" as "any article, or component part thereof, produced or distributed" for use, consumption or enjoyment "*in or around* a permanent or temporary household or residence." § 2052(a)(5) (emphasis added). See, e.g., Consumer Product Safety Commission v. Anaconda Co., 593 F.2d 1314, 1320 (D.C. Cir. 1979) ("Housing is not a 'consumer product.'"). Plaintiff only alleged claims related to purported deficiencies in his residential housing and therefore failed to state a claim under CPSA.

Plaintiff also failed to state discrimination claims. Plaintiff alleges age discrimination and discrimination by economic determinism and gentrification. "Economic determinism" and "gentrification" claims are easily disposed of as they are not within the scope of the Fair Housing Act or Civil Rights Act, nor are they causes of action. Plaintiff's age discrimination claim also fails.

While failing to identify a legal basis for these allegations, Plaintiff cites the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and the Civil Rights Acts of 1866, 1964 and 1968 in the "jurisdiction" paragraph of the Amended Complaint. However, Plaintiff has failed to allege facts adequate to plead a claim under these statutes.

The Fair Housing Act prohibits discrimination in rental housing based on "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604. Relative to these categories, Plaintiff alleged neither that he was discriminated against, nor that he was treated differently in any way. To the contrary, Plaintiff's alleges that he was treated exactly like all of the other tenants at Hunting Point Apartments. The Amended Complaint purports to represent "every man, woman, child and pet . . . being *involuntarily evicted* from all 540 units at Hunting Point Apartments" (emphasis in original). Plaintiff claims that "each and every tenant in the 540 unit apartment complex are innocent victims of a 'blanket eviction.'" The Amended Complaint states no claim for violation of the Fair Housing Act.

Plaintiff also appears to intend to bring a claim under the Civil Rights Act of 1964, codified at 42 U.S.C. § 1981 *et seq.* Other than his specific § 1983 claim, however, Plaintiff does not specify which of the Civil Rights Act's eleven different titles he seeks to enforce. Even in the light most favorable to

Plaintiff, he has not alleged any facts indicating that he has suffered any civil rights violations in any of the spheres covered by the Civil Rights Act, or been treated differently than other similarly situated tenants in any way. He therefore fails to state a claim under the Civil Rights Act.

Plaintiff fails to state a claim for improper eviction. Plaintiff alleges that he and his fellow tenants are victims of a "blanket eviction." This allegation is false on the face of the Amended Complaint. Plaintiff states that he still lives at Hunting Point Apartments.

Moreover, in Virginia, eviction is governed by state law and is not a matter of federal law. See Virginia Residential Landlord and Tenant Act, Va. Code Ann. § 55-248.2 et seq. The General District Court is the proper venue for eviction claims. Id. at § 55-248.26. Plaintiff concedes as much. In May 2015 he filed a complaint in the General District Court for Alexandria City, alleging "unlawful displacement/eviction/ouster." See Case No. GV002469-00. Plaintiff voluntarily dismissed that claim. The instant eviction claim is therefore frivolous.

Plaintiff fails to state a claim for asbestos-related injury. Plaintiff's original Complaint failed to plead any facts indicating that he suffered any personal injury. After Defendants filed a motion to dismiss the Complaint, arguing in part that Plaintiff's tort claims should be dismissed for failure to allege

damages, Plaintiff added to his Amended Complaint several vague and contradictory statements regarding alleged asbestos-related injuries. He repeatedly states that he has suffered generic "personal injury." He asserts that he suffers from "dysphagia" (a medical term for difficulty swallowing) and "irreparable injury to the larynx" as a result of asbestos exposure. He alleges that he has been "exposed" and "subjected to the danger" of mesothelioma, and that he has suffered "permanent and irreparable damage to the anatomy due to mesothelioma disease." He also alleges that he has suffered "damage and financial loss to his newly formed professional career . . . as a performer," thereby "wip[ing] out years of preparation, expense and creativity[.]"

Plaintiff's Amended Complaint entirely fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. There is no allegation as to when, where, how, or to what extent Plaintiff was exposed to asbestos. There is no allegation regarding any specific act or omission of the Defendants that might have resulted in any such alleged exposure to Plaintiff, other than an impermissibly generic and conclusory reference to "ongoing negligent construction and renovation." There is no allegation that Plaintiff was ever diagnosed with any asbestos-related injury-the

trigger for an asbestos-related cause of action to arise under Va. Code Ann. § 8.01-249(4). Plaintiff's asbestos-related allegations fail to state a claim because they are comprised mostly of rhetoric, "labels and conclusions," and "formulaic recitations" of legal jargon without any factual basis. See Twombly, 550 U.S. 555.

The Amended Complaint also fails to convey an accrual date for Plaintiff's asbestos claim. Plaintiff suggests that his alleged asbestos-related injuries–"life threatening malignant mesothelioma (a/k/a asbestos) and dysphagia"–have been ongoing over a "four year period." However, Plaintiff's pleading acknowledges that HPA only acquired and began renovating Plaintiff's apartment building two years ago. Plaintiff's allegation is facially implausible.

Finally, Plaintiff states no claim against Defendant Jeff Elowe. Plaintiff does not allege any specific acts, omissions, or violations by Mr. Elowe or any other Laramar Group official. Plaintiff's Amended Complaint against Mr. Elowe lacks the minimal specificity required by Iqbal, 556 U.S. at 679. To the extent that the Amended Complaint seeks to reach Mr. Elowe in his official capacity, as a stand-in for the Laramar Group, the pleading likewise fails. To reach a corporate official for acts of the corporation itself, this Court must "pierce the corporate veil," a doctrine governed by state law. See County of Grayson

v. RA-Tech Services, Inc., No. 7:13-CV-00384, 2013 WL 6002348, at
*3 (W.D. Va., Nov. 13, 2013). In Virginia, piercing the corporate
veil requires "unity of interest and ownership . . . such that
the separate personalities of the corporation and the
individual[s] no longer exist." Id. (citing O'Hazza v. Executive
Credit Corp., 246 Va. 111, 115 (1993)). Plaintiff has made no
such allegation with respect to Mr. Elowe and the Laramar Group.
To the contrary, the very fact that Plaintiff has sued Mr. Elowe
on behalf of seven other Laramar Group officials, all with
corporate titles, belies any suggestion that Mr. Elowe is a
simple "alter ego" of an entity that Plaintiff himself describes
as "real estate interests not dealing in millions, but billions,
with properties all over the United States[.]" Plaintiff's basis
for suing Mr. Elowe is frivolous.

For the foregoing reasons, Plaintiff fails to state a
plausible claim for relief and Defendants' Motion to Dismiss
must be granted.

Further, this Court finds that Plaintiff makes no
allegation that states a claim that can go forward against Gina
McCarthy, Administrator of the U.S. Environmental Protection
Agency, an additional defendant named in Plaintiff's Amended
Complaint. Plaintiff's claim against Administrator McCarthy is
dismissed.

An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September 8 , 2015